UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 09-CV-977 (JFB) (MLO)
_____

VINCENT VALENTI,

Plaintiff,

VERSUS

MASSAPEQUA UNION FREE SCHOOL DISTRICT AND BARBARA WILLIAMS, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES,

Defendants.

_____

**MEMORANDUM AND ORDER**
February 5, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Vincent Valenti ("Valenti" or "plaintiff") brings this civil rights action against his employer, the Massapequa Union Free School District (the "School District") and Barbara Williams ("Williams"), a principal employed by the School District, in her individual and official capacity (collectively "defendants"), alleging the following: 1) employment discrimination on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII") and Article 15 of the Executive Law of the State of New York §§ 290 and 296 (the "Human Rights Law");[1] 2) unlawful retaliation for

---

[1] Because, as plaintiff concedes in his opposition to the instant motion, "individuals are not subject to liability under Title VII," *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004), that claim, as asserted against Williams, is hereby dismissed. However, the Human Rights Law does permit suits against individual defendants under certain circumstances. *See Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 676-77 (S.D.N.Y. 2001) (noting that an employee may be held individually liable under the Human Rights Law if he has "sufficient authority and power to do more than simply carry out personnel decisions made by others"). For the reasons set forth *infra*, the Court finds that plaintiff has met his pleading burden as to the Human Rights Law claim against

engaging in activities protected by the aforementioned statutes; and 3) violation of his Equal Protection rights secured by 42 U.S.C. § 1983 ("§ 1983").[2] Plaintiff seeks actual, compensatory, and punitive damages, attorney's fees and other costs, and equitable relief. Defendants now move to dismiss the action in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. For the reasons set forth below, defendants' motion is granted in part and denied in part. Specifically, defendants' motion to dismiss the Title VII claim against Williams, as well as the § 1983 claim against Williams in her official capacity, is granted. Defendants' motion to dismiss is denied as to all remaining claims.

I. BACKGROUND

A. Facts

For purposes of this motion to dismiss, the Court has taken the facts described below from the plaintiff's Complaint ("Compl."). These facts are not findings of fact by the Court but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party. *See LaFaro v. N.Y. Cardiothoracic Group*, 570 F.3d 471, 475 (2d Cir. 2009).

1. Background

Vincent Valenti has been employed as a special education teacher in the School District since in or about September 1984. (Compl. ¶ 14.) Barbara Williams is a principal in the School District who possesses "the authority to hire, fire, and discipline employees at the School District" as well as "the power to do more than carry out personnel decisions made by others." (*Id*. ¶¶ 6-8.)

On March 11, 2003 and December 3, 2004, plaintiff filed two separate complaints against the School District, alleging gender discrimination and unlawful retaliation. (*Id*. ¶ 15.) By Memorandum and Order dated September 5, 2006, the undersigned granted the School District's motion for summary judgment and dismissed both complaints in their entirety.[3] (*Id*. ¶ 16.)

---

Williams, and, therefore, defendants' motion to dismiss that claim is denied.

[2] The § 1983 claim asserted against the individual defendant in her official capacity is duplicative of the municipal liability claim lodged against the School District under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), discussed *infra*. This is because § 1983 actions against officials in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also, e.g.*, *Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003) (dismissing claims against officials sued in their official capacities where plaintiff also sued municipality) (citing *Graham*, 473 U.S. at 165-66). Thus, the § 1983 claim against the individual defendant in her official capacity is dismissed. However, for reasons set forth below, the § 1983 claim against Williams in her individual capacity survives the instant motion.

[3] *See Valenti v. Massapequa Union Free Sch. Dist.*, Nos. 03-CV-1193 (JFB) (MLO), 04-CV-5271 (JFB) (MLO), 2006 WL 2570871 (E.D.N.Y. Sept. 5, 2006).

2

### 2. Allegations of Harassment

On or about September 27, 2007, Williams came to plaintiff's classroom and asked plaintiff to speak with her after class about "something that was brewing." (*Id.* ¶ 17.) When plaintiff arrived at Williams's office, his union representative, Alex Norden, was present. (*Id.* ¶ 18.) Williams informed plaintiff that she had asked Norden to attend the meeting and proceeded to tell plaintiff that, at "Back to School Night," a parent of one of plaintiff's female students told Williams that plaintiff had touched her daughter. (*Id.* ¶¶ 19-20.) Plaintiff denied the allegation and requested the name of the student and circumstances of the allegation out of concern for future fabrications by the student. (*Id.* ¶ 21.) Williams responded that the situation had been "handled" and stated that the parent in question "loves you." (*Id.* ¶ 22.) Plaintiff states, upon information and belief, the following: 1) no formal report was written absolving plaintiff of this allegation; 2) no discipline was instituted against the accusing student; and 3) no action was taken to remove the student from plaintiff's class, despite strict School District policies that govern such false accusations and that are enforced for female instructors. (*Id.* ¶¶ 23-26.)

### 3. Plaintiff's Work Environment

On or about October 2, 2007, plaintiff attended a department meeting with his female colleagues at which time his direct supervisor, Lori Saland, outlined new procedures for teacher observations and lesson plans, stating: "I'm sure most of you will have no problem with it. It's going to be harder for Vinny than others." (*Id.* ¶¶ 29-30.) Plaintiff believes that Saland's comment indicated that the new procedures would be more difficult for him because he is male. (*Id.* ¶ 31.)

On or about October 11, 2007, plaintiff was the only male teacher at a department workshop wherein the guest speaker, Judy Dodge, asked the audience members for a topic of discussion and stated: "We have a man here[,] otherwise we'd do it on menopause." (*Id.* ¶¶ 32-33.) Plaintiff maintains the speaker discriminated against him by referencing his gender and that defendants permitted this discrimination to take place. (*Id.* ¶ 34.)

On or about November 6, 2007, plaintiff attended the Superintendent's Conference Day wherein the guest speaker told a joke about a man being sent to Victoria's Secret by his wife to purchase a bra for her. (*Id.* ¶¶ 35-36.) Again, plaintiff submits that this comment discriminated against him based on his gender and that defendants sanctioned this allegedly unlawful behavior. (*Id.* ¶ 37.)

### 4. Supervision of Plaintiff

On or about January 14, 2008, Helen St. Nicholas, High School Administrator for the School District, arranged for Kristopher Schmidt, a student observer, to attend plaintiff's class. (*Id.* ¶ 38.) On or about January 16, 2008, Williams instructed Schmidt to observe one period of plaintiff's class, rather than observing an entire day. (*Id.* ¶ 39.) Plaintiff asserts, upon information and belief, the following: 1) Williams placed Schmidt with novice teachers and instructed him that he would receive a more comprehensive experience observing those individuals; 2) Saland sent e-mails to plaintiff's colleagues announcing this change with the express purpose of harming

3

plaintiff's "career and experience"; and 3) in making this change and informing plaintiff's colleagues about it, defendants treated plaintiff differently from similarly situated female instructors in retaliation for the lawsuits he had previously filed against the School District. (*Id*. ¶¶ 40-42.)

On or about February 4, 2008, Saland e-mailed plaintiff, stating: "Student Recommendation [sic] were due on Friday! Please submit ASAP." (*Id*. ¶¶ 43-44.) The next day, plaintiff advised Saland via e-mail that he had submitted the recommendations two weeks earlier and that they were in her school mailbox. (*Id*. ¶ 45.) Between February 5 and 6, 2008, plaintiff received an e-mail from Saland wherein she informed him that she could not find the recommendations. (*Id*. ¶ 46.) On or about February 11, 2008, Saland came to plaintiff's classroom while his teacher's aide was present and directed plaintiff to e-mail her the recommendations, at which time plaintiff asked her why she needed them again. (*Id*. ¶¶ 47-50.) Saland then raised her voice and asked, "Are you telling me you're not going to send them?" (*Id*. ¶ 50.) Plaintiff felt that he was harassed and subjected to increased supervision by Saland because he is male and filed prior lawsuits against the School District. (*Id*. ¶ 52.)

Between February 6 and 11, 2008, plaintiff received a copy of the schedule for Annual Reviews and was given only two days to conduct these meetings with fifteen students. (*Id*. ¶¶ 53-54.) Plaintiff maintains, upon information and belief, that he received less time to conduct these meetings than did his similarly situated female colleagues because he is male and because he took prior legal action against the School District. (*Id*. ¶ 55.) Plaintiff then e-mailed Saland and requested more time in which to complete the reviews, which Saland provided. (*Id*. ¶ 57.)

B. Procedural History

On March 10, 2009, plaintiff filed the instant action, which was assigned to the Honorable Sandra J. Feuerstein. On April 30, 2009, this matter was reassigned to the undersigned. Defendants moved to dismiss the complaint on May 11, 2009. Plaintiff filed his opposition on June 8, 2009. Defendants submitted their reply on June 17, 2009. Oral argument was held on July 8, 2009. This matter is fully submitted.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), setting forth a

two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

With respect to pleadings in discrimination cases, the Supreme Court, in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), rejected the concept that there is a heightened pleading standard and, thus, held that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a *prima facie* case under the standard set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Swierkiewicz*, 534 U.S. at 510 ("The *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *see also Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 71-72 (2d Cir. 2006) (applying *Swierkiewicz* holding to retaliation claims); *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* holding to discrimination claims under Title VII).[4]

The Supreme Court has recently reiterated that "courts should generally not depart from the usual practice under the Federal Rules [of Civil Procedure]," and explained that heightened pleading requirements can only be established through the legislative process. *Jones v. Bock*, 549 U.S. 199, 212-13 (2007). No such heightened pleading requirement for discrimination claims exists. Therefore, the controlling standard for survival of a motion to dismiss lies not in *McDonnell Douglas*, but in Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz*, 534 U.S. at 513 (complaints in discrimination cases "must satisfy only the simple requirements of Rule 8(a)").[5]

---

[4] In *McDonnell-Douglas*, the Supreme Court established a three-step, burden-shifting framework that is used in discrimination cases. Under that framework, a plaintiff who cannot show direct evidence of discrimination can nonetheless establish a *prima facie* case of discrimination by showing (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000).

[5] The recent Supreme Court decisions in *Iqbal* and *Twombly* do not obviate this standard. Indeed, the Court in *Twombly* explicitly reaffirmed *Swierkiewicz*. 550 U.S. at 570 (citing *Swierkiewicz*, 534 U.S. at 508); *see also Boykin v. Key Corp.*, 521 F.3d 202, 213 (2d Cir. 2008) (noting that the *Twombly* Court "affirmed the vitality of *Swierkiewicz*"); *Gilman v. Inner City*

5

III. DISCUSSION

In the instant matter, defendants argue the alleged instances of discrimination, as pled, do not give rise to actionable claims under Title VII, the Human Rights Law, or the Equal Protection Clause of the Fourteenth Amendment, and presuming that they do, Williams is entitled to qualified immunity for all surviving claims against her. As set forth below, the Court finds that plaintiff's complaint has satisfied the strictures of Federal Rule of Civil Procedure 8(a), as clarified by the Supreme Court in the recent *Iqbal* decision. Further, because the record does not provide a sufficient basis at this juncture for the Court to determine whether Williams is entitled to qualified immunity for the § 1983 claim against her,[6] the motion to dismiss those claims on the basis of qualified immunity is denied without prejudice to renewal at the summary judgment stage, should Williams decide to make such a motion.

A. Title VII and the Human Rights Law[7]

Title VII makes it unlawful for an employer or labor organization "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a), (c). Employment actions that the Second Circuit has deemed sufficiently disadvantageous to constitute an adverse employment action for purposes of a discrimination claim include "'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Williams*, 368 F.3d at 128) (internal quotation marks omitted). "[T]here is no exhaustive list of what constitutes an adverse employment action. Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make

---

*Broadcasting Corp.*, No. 08 Civ. 8909 (LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009) ("*Iqbal* was not meant to displace *Swierkiewicz*'s teachings about pleading standards for employment discrimination claims because in *Twombly*, which heavily informed *Iqbal*, the Supreme Court explicitly affirmed the vitality of *Swierkiewicz*.").

[6] As stated *supra*, both plaintiff's Title VII claim against Williams and his § 1983 claim against her in her official capacity fail as a matter of law and are, therefore, dismissed.

[7] In addition to alleging claims under Title VII, plaintiff alleges discrimination under the Human Rights Law. The same standards governing Title VII discrimination claims generally apply to claims under the Human Rights Law. *See Schiano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996); *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992). Therefore, the Court will analyze the motion to dismiss both claims together.

a normal life difficult for the employee, among other things, constitute adverse employment actions." *Little v. NBC*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002); *see also, e.g.*, *Feingold v. N.Y.*, 366 F.3d 138, 152-53 (2d Cir. 2004) (holding that the "assignment of a disproportionately heavy workload" can constitute an adverse employment action); *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000) ("[A] transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career."); *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 444 (2d Cir. 1999) (holding that transfer to a slightly different position under circumstances indicating intention to encourage resignation does constitute an adverse employment action); *de la Cruz v. N.Y. City Human Res. Admin. Dep't of Social Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (finding that transfer from elite division could constitute adverse action); *Wright v. N.Y. City Off-Track Betting Corp.*, No. 05 Civ. 9790, 2008 U.S. Dist. LEXIS 22567, at *10 (S.D.N.Y. Mar. 24, 2008) ("Comparatively poor assignments can constitute adverse employment actions."); *Nakis v. Potter*, No. 01 Civ. 10047 (HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec.15, 2004) ("The three remaining adverse actions alleged by plaintiff – deprivation of training, treatment of leave hours and assignment of menial 'make-work' tasks – appear to bear on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation. Accordingly, . . . I conclude that a jury could reasonably conclude that these events were adverse employment actions."); *Neratko v. Frank*, 31 F. Supp. 2d 270, 283 (W.D.N.Y. 1998) ("Allegations of inferior and less desirable work duties may constitute an adverse employment action.").

With respect to the retaliation claim, "Title VII forbids an employer to retaliate against an employee for, *inter alia*, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d at 115 (citing *Feingold*, 366 F.3d at 156). Title VII protects not only those employees who opposed employment practices made unlawful by the statute but also those who have "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" even if those actions did not. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). Finally, the Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from and broader than the standard in the Title VII discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). In other words, an adverse act, for retaliation purposes, is one that "'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir.

7

2007) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)). The Supreme Court has noted that "the significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington*, 548 U.S. at 69.

Defendants argue that the claims must be dismissed because, among other things, plaintiff has not set forth a *prima facie* case of employment discrimination under the *McDonnell Douglas* standard; specifically, they contend that plaintiff has not demonstrated that any adverse action was taken against him. However, as stated *supra*, because Title VII actions are not subject to a heightened pleading standard, plaintiff's complaint need "only contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In the instant matter, plaintiff has pled that: 1) defendants were aware of the prior lawsuits he had filed against them based on his good faith belief that he was the victim of workplace discrimination; 2) soon thereafter, defendants failed to conduct a full investigation regarding a student's allegations that plaintiff had inappropriately touched her; 3) defendants failed to discipline the student for making a false accusation; and 4) defendants failed to provide plaintiff with the name of the student, who remained in his class, meaning that he lived with the fear of further false allegations for the remainder of the school year. Plaintiff further alleges that defendants have specific procedures to address these very types of situations that are instituted for similarly situated female instructors, and defendants specifically chose not to follow these procedures for plaintiff because he is male and because he participated in protected activity. Finally, plaintiff alleges that Williams had specific involvement and control over the decision not to institute those procedures. In addition, plaintiff has raised allegations of excessive scrutiny based on sex that he claims have materially impacted his ability to perform his job. Plaintiff has thus sufficiently alleged that he was subject to an adverse employment action for purposes of both a gender discrimination and a retaliation cause of action under Title VII and the Human Rights Law.[8] *See, e.g., Flynn v. N.Y. State Div. of Parole*, 620 F. Supp. 2d 463, 498 (S.D.N.Y. 2009) (finding plaintiff who was allegedly "subjected to selective enforcement of the rules regarding certain formal procedures" demonstrated adverse action for purposes of Title VII retaliation claim); *Walker v. N.Y. City Dep't of Corr.*, No. 01

---

[8] Plaintiff also alleges that defendants subjected him to gender-specific comments and other incidents plaintiff claims were based on gender, but plaintiff has not brought a hostile work environment claim based on the foregoing. Defendants argue that these individual instances do not constitute adverse actions as a matter of law. However, because plaintiff's claims survive a motion to dismiss based upon the alleged failure to initiate investigative and/or disciplinary procedures with respect to the student allegation of abuse against plaintiff, the Court need not address defendants' argument at this time with respect to these other incidents. Those other incidents, however, should be part of the discovery process because, at a minimum, they could plausibly be probative on the discrimination/retaliation claims relating to the student-abuse allegation.

8

Civ. 1116 (LMM), 2008 WL 4974425, at *15-16 (S.D.N.Y. Nov. 19, 2008) (finding plaintiff who demonstrated that standards of workplace conduct were applied differently to males and females brought cognizable claim of adverse action under Title VII).[9] He has further alleged that Williams had "sufficient authority and power to do more than simply carry out personnel decisions" made by the School District so as to sustain his cause of action against her individually under the Human Rights Law. *Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 676-77 (S.D.N.Y. 2001). Accordingly, the Court finds that plaintiff has provided a sufficiently clear statement, supported by plausible factual allegations, in order to satisfy Rule 8(a), which "enable[s] the adverse party to answer and prepare for trial, allow[s] the application of *res judicata*, and identif[ies] the nature of the case so it may be assigned the proper form of trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (internal quotation omitted). Nothing more is required at this stage in the proceedings.

---

[9] The Court recognizes that the "selective enforcement" aspect of plaintiff's claim, as well as the plaintiffs' claims in the cited cases, relate to the "inference of discrimination" prong of the *McDonnell Douglas* evidentiary standard, and defendants do not contest for the purposes of the instant motion that plaintiff has adequately pled that aspect of his Title VII claims. However, in both of the above-referenced cases, as well as in the case at bar, the defendants' alleged failure to provide plaintiff with standard protections and/or procedures in the workplace could plausibly constitute an adverse action. Of course, the full nature of the factual circumstances surrounding the alleged adverse action will be explored in discovery.

The Court notes that, in arguing for dismissal, defendants do not claim that plaintiff failed to provide sufficient notice of his claim or that the facts alleged therein lack facial plausibility. Instead, defendants address the merits of the claim, stating that the actions alleged fall well short of the standard for "adverse action" set by this Court, and others, in adjudicating Title VII suits. (*See, e.g.*, Def.'s Mem. of Law, at 9 (characterizing plaintiff's grievances as "mere inconveniences" and "subjective or personal disappointments").) However, the cases to which defendants cite were all decided at the summary judgment stage when the requirements of the *McDonnell Douglas* evidentiary standard were operative. Such is not the case now. *See Leibowitz*, 445 F.3d at 591 n.3 ("In finding *McDonnell Douglas* applicable at the pleading stage, the district court erroneously relied upon cases that were either abrogated by the Supreme Court's decision in *Swierkiewicz* or decided upon motions for summary judgment, as distinguished from motions to dismiss.").

Furthermore, the fact that defendants are able to argue the merits is evidence that defendants have sufficient notice and that plaintiff's complaint achieves the ends the Second Circuit described in *Simmons*. 49 F.3d at 87 (holding that a movant's failure to argue non-compliance with Rule 8 was evidence that the plaintiff's complaint contained sufficient notice); *see also Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (stating that the movant's failure to argue a lack of notice was evidence that sufficient notice was given through the pleadings). Thus, although defendants may believe that plaintiff's claim will ultimately fail, "[t]his simplified notice pleading standard [under Rule 8(a)] relies on liberal discovery rules and summary judgment motions to define disputed

9

facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512. Thus, defendants will have a full opportunity to raise these arguments should they move for summary judgment at the conclusion of discovery, and their motion to dismiss plaintiff's Title VII claim against the School District and Human Rights Law claim against both defendants is denied.

### B. Equal Protection

Plaintiff also asserts a cause of action under 42 U.S.C. § 1983 based upon the alleged discriminatory conduct and improper retaliation by defendants. Specifically, plaintiff alleges that his constitutional rights under the Equal Protection Clause of the Fourteenth Amendment were violated by the defendants when they failed to protect him from the allegedly false accusations of a student.

### 1. Legal Standard

Under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself provide substantive rights, but in fact offers "a method for vindicating federal rights elsewhere conferred." *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.") (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "'A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action,' such as a claim for denial of equal protection, 'so long as the § 1983 claim is based on a distinct violation of a constitutional right.'" *Patterson*, 375 F.3d at 225 (quoting *Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir. 1994) and citing *Saulpaugh v. Monroe Comm. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)). Plaintiff asserts violations of his rights under the Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Pursuant to the Supreme Court's decision in *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978), a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a respondeat superior theory." 436 U.S. at 691. It is well established that "[a] plaintiff stating a . . . claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the [violation] was the result of municipal custom, policy, or practice." *Fitzgerald v. Barnstable Sch. Comm.*, - - - U.S. - - -, 129 S. Ct. 788, 797 (2009) (citing *Monell*, 436 U.S. at 694); *see also Monell*, 426 U.S. at 692-96 (finding the same for a school board); *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 600 (5th Cir. 2001) ("Under § 1983, [plaintiff] may sue a local governing body, such as the school district, or the school board as policymaker for the district, for monetary, declaratory, or injunctive relief if the challenged action implements or executes a policy officially adopted by that body's officers. Neither the school board nor the school district can be liable for the actions . . . under a respondeat superior theory."). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of*

10

*Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (quoting *Kern*, 93 F.3d at 44). "A municipality's failure to train or supervise its officers can rise to the level of an actionable policy or custom where it amounts to 'deliberate indifference' to the constitutional rights of its citizens." *Hall v. Marshall*, 479 F. Supp. 2d 304, 315-16 (E.D.N.Y. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) and *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) ("A municipality may be liable under § 1983 . . . where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference.")). "For purposes of § 1983, school districts are considered to be local governments and are subject to similar liability as local governments under *Monell*." *Booker v. Bd. of Educ.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) (citing *Monell*, 436 U.S. at 696-97); *see also Irene B. v. Phila. Acad. Charter Sch.*, No. 02-1716, 2003 U.S. Dist. LEXIS 3020, at *30-32 (E.D. Pa. Jan. 29, 2003) (treating charter school as municipal entity for *Monell* purposes).

Here, plaintiff has alleged that, when a student accused him of improper behavior, the School District did not afford him the same procedural protections that were afforded to similarly situated female instructors and that it intentionally failed to do so because he is male. Moreover, plaintiff alleges that the School District's failure to do so was part of a "custom and/or policy of the district as other students of female teachers were properly disciplined for charges against them of the same caliber." (Compl. ¶ 28.) Plaintiff has, therefore, set forth a cognizable § 1983 equal protection claim against the School District, supported by plausible factual allegations, and, therefore, defendants' motion to dismiss that claim must be denied.

Regarding the claim as asserted against Williams in her individual capacity, the Court notes that though "Title VII claims are not cognizable against individuals, individuals may be held liable under . . . [§] 1983 for certain types of discriminatory acts[.]" *Patterson*, 375 F.3d at 226 (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753-54 (2d Cir. 2003)) (additional citation omitted). However, a plaintiff must demonstrate a defendant's *personal* involvement in the alleged discrimination in order to establish a claim against such defendant in his individual capacity. *Id*. at 229; *see Iqbal*, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983."); *see also Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a plaintiff's § 1983] claim.").

In the instant case, plaintiff has alleged that Williams was directly involved in the School District's decision not to institute investigative and/or disciplinary proceedings when a student told Williams that plaintiff had inappropriately touched her—procedures

regularly enforced when a female instructor was the subject of such accusations—and that she participated in this decision out of gender-based animus. He has thus pled the requisite legal elements of an equal protection claim of gender discrimination against a state actor in her individual capacity, supported by plausible factual allegations.

C. Qualified Immunity

Defendants argue that, even if the Court finds that the pleading requirements have been met as to claims brought against Williams, she is entitled to qualified immunity for her allegedly unlawful actions. However, given the absence of a factual record, the Court cannot conclude at this juncture that Williams is entitled to qualified immunity. "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). The Second Circuit has held that "a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004). This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal citations omitted). Here, if the allegations in the complaint are all resolved in plaintiff's favor and the jury concludes that Williams intentionally discriminated against him under § 1983, qualified immunity would not protect Williams. *See, e.g.*, *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 130 (2d Cir. 2004) ("We find that the two remaining individual defendants in this case are not entitled to qualified immunity. It was eminently clear by 2001, when the alleged discrimination took place, both that individuals have a constitutional right to be free from sex discrimination, and that adverse actions taken on the basis of gender stereotypes can constitute sex discrimination."). Because the current record does not provide a sufficient basis for the Court to make the qualified immunity determination at this juncture, the motion to dismiss all claims against Williams on the basis of qualified immunity is denied. However, such denial is without prejudice to renewal at the summary judgment stage, should the individual defendant decide to make such a motion.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Title VII claim against the individual defendant and the § 1983 claim against the individual defendant in her official capacity is granted. Defendants' motion to dismiss the Title VII claim against the School District, the Human Rights Law claim against all defendants, and the § 1983 claims against the School District and the individual defendant in her individual capacity is denied. The parties shall proceed with discovery forthwith under the Individual Rules of Magistrate Judge Orenstein.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:    February 5, 2010
          Central Islip, New York

\* \* \*

Plaintiff is represented by Scott M. Mishkin, Esq., One Suffolk Square, Suite 240, Islandia, New York, 11749. Defendants are represented by Steven C. Stern and Leo Dorfman, Solokoff Stern LLP, 355 Post Avenue, Suite 201, Westbury, NY 11590.